IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ELEVATOR BARGAINING ASSOCIATION and SCHINDLER ELEVATOR CORPORATION<br>    Plaintiffs;<br><br>    v.<br><br>LOCAL 5, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, JOSEPH WILLIAMS, Individually and as Business Manager; JACK KOCH, Individually and as Business Representative; ERIC RITTENHOUSE, Individually and as Business Representative; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf,<br>    Defendants. | CIVIL ACTION NO._____ |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs National Elevator Bargaining Association ("NEBA") and Schindler Elevator Corporation ("Schindler"), by their attorneys, complain of Defendants International Union of Elevator Constructors ("IUEC") Local No. 5 ("Local 5" or the "Union"), Joseph Williams, Jack Koch, and Eric Rittenhouse as follows:

## THE PARTIES

1.  Plaintiff NEBA, a multi-employer bargaining association with its principal office in Seymour, Connecticut, is the representative for collective-bargaining purposes for employer-members who are engaged in the business of constructing, modernizing, repairing, and maintaining elevators, escalators, dumbwaiters, moving walkways, and similar devices for third parties such as building owners and general contractors throughout the United States, including Pennsylvania.

2.     Plaintiff Schindler, a Delaware corporation, is engaged in the business of constructing, modernizing, repairing, and servicing of elevators and escalators throughout the United States, including Pennsylvania.

3.     Plaintiff Schindler has its headquarters in Morristown, New Jersey, and field offices throughout the United States, including an office that oversees Plaintiff Schindler's operations in Philadelphia, Pennsylvania and surrounding areas in Pennsylvania, New Jersey and Delaware.

4.     Plaintiff Schindler is an employer-member of NEBA and is represented by Plaintiff NEBA for purposes of collective bargaining.

5.     Plaintiff Schindler is an employer within the meaning of Section 2(2) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(2).

6.     Plaintiff Schindler employs elevator constructor Mechanics, Helpers and Apprentices represented by Defendant IUEC Local 5.

7.     The International Union of Elevator Constructors ("IUEC") is the exclusive collective-bargaining representative of elevator constructor Mechanics, Helpers and Apprentices, for and on behalf of its local unions, including Defendant Local 5, which has a principal place of business at 12273 Townsend Road, Philadelphia, Pennsylvania.  Defendant Local 5 represents elevator constructor Mechanics, Helpers and Apprentices employed by Plaintiff Schindler in the Philadelphia and surrounding areas.

8.     Defendant Local 5 is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5).

9.     Defendant Joseph Williams is Local 5's Business Manager.

10.     Defendant Jack Koch is a Business Representative for Local 5.

11.    Defendant Eric Rittenhouse is a Business Representative for Local 5.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 29 U.S.C. § 185.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2).

## NATURE OF THE ACTION

14.    This is an action brought by NEBA and Schindler against Local 5, its Business Manager Williams, and Business Representatives Koch and Rittenhouse, for breach of contract and tortious interference with actual and prospective contractual relationships, arising out of concerted work stoppages and other interferences with Schindler's operations in violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, as defined in the Labor Management Relations Act, 29 U.S.C. § 141 et seq.

## RELEVANT BACKGROUND

15.    Plaintiff NEBA, on behalf of its employer-members including Plaintiff Schindler, and the IUEC, for and on behalf of its Locals including Defendant Local 5, entered into a collective-bargaining agreement which became effective July 9, 2017 and remains in full force and effect until July 8, 2022 (the "NEBA Agreement").  A true and accurate copy of the NEBA Agreement is attached as Exhibit A.

16.    The NEBA Agreement succeeded predecessor agreements between Plaintiff NEBA and the IUEC that were in effect July 9, 2007 through July 8, 2012, and from July 9, 2012 through July 8, 2017, respectively.

17.    From 2002 through 2007, Plaintiff Schindler entered into a five-year collective-bargaining agreement with the IUEC "for and on behalf of its affiliated local unions . . . " (the "Schindler Agreement").  Prior to 2002, for many years Plaintiff Schindler was a member of the

National Elevator Industry Inc. ("NEII"), a multi-employer association that negotiated a series of collective-bargaining agreements with the IUEC (the "Standard Agreements").

18. The NEBA Agreement and its predecessors have substantially the same language as the predecessor Schindler Agreement and the Standard Agreement in many articles.

19. Article XIV of the NEBA Agreement, like its predecessors, expressly prohibits strikes during the term of the Agreement. It provides in pertinent part:

## ARTICLE XIV
## STRIKES AND LOCKOUTS

**Par. 1.** It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party. It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2.** No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator Constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by lawful picketing or strikes by building trades local unions affiliated with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers, Apprentices and Assistant Mechanics on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

20. Article XV of the NEBA Agreement requires that "[a]ny difference or dispute regarding the application and construction of this Agreement" shall be resolved under the

4

grievance/arbitration procedure set forth in the Agreement, which provides for final and binding arbitration by an impartial arbitrator.

21. The NEBA Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers and Apprentices employed by Plaintiff Schindler in Pennsylvania.

22. Article XV of the NEBA Agreement applies, *inter alia*, to disputes regarding the decision to discipline or discharge employees covered by the Agreement.

23. On numerous occasions the IUEC and its locals have asserted grievances and arbitrated disputes over the discharge of employees covered by the Agreement. Arbitrators in the industry have repeatedly held that immediate discharge is appropriate in the case of serious safety violations. In short, disputes involving the discharge of employees covered by the NEBA Agreement are and have been subject to the grievance and arbitration process set forth in Article XV of the NEBA Agreement.

## THE UNLAWFUL WORK STOPPAGE

24. A dispute has arisen with Defendant Local 5 concerning the termination of an employee who committed a serious safety infraction.

25. Plaintiff Schindler has new installation, service and maintenance contracts with numerous customers throughout southern New Jersey, Delaware and Pennsylvania under which Plaintiff Schindler installs, maintains, repairs and adjusts elevators and escalators on an "as-needed basis," 24 hours per day, seven days per week.

26. Plaintiff Schindler Territory Operations Manager Samuel Bone is responsible for overseeing all aspects of Schindler's new equipment installation of elevators and escalators in a geographical territory which includes areas of southern New Jersey, Delaware and Pennsylvania including Philadelphia and surrounding areas.

5

27.     On August 24, 2021, Senior Superintendent Anthony Fabiano Jr. and other Schindler representatives observed employee Mechanic Sean Dougherty in violation of a "No-Go Life Safety" Rule, by utilizing an expired piece of hoisting equipment (i.e. TYRAK) during the installation of an elevator on a residential construction project.   The date of certification of the equipment was clearly stated on the tag affixed to the TYRAK device, which should have alerted Mechanic Dougherty that the device would require re-inspection and re-certification as of March 31, 2021.  Mechanic Dougherty acknowledged that he had not verified the expiration date of the TYRAK.

28.     Because Mechanic Dougherty was previously disciplined for safety infractions, Defendant Williams was aware of Schindler's concerns regarding Mechanic Dougherty's ability to follow the Company's safety standards and practices.  Defendant Williams had assured Operations Manager Bone that Mechanic Dougherty would comply with Schindler's Field Safety Handbook.  Following the safety violation that occurred on August 24, 2021, Mechanic Dougherty was discharged.

29.     On August 25, 2021, at about 7 a.m., Defendants Koch and Rittenhouse appeared at Schindler's offices.  After being informed that Mechanic Dougherty was being discharged, Defendant Koch said to Operations Manager Bone, "I have a feeling that morale is going to drastically decline immediately."

30.     Shortly thereafter, Plaintiff Schindler field employees began reporting to their supervisors that Defendant Local 5 officials had directed them to cease working immediately, leave their jobsites and report to the Union Hall.

31.     At about 8:55 a.m. Operations Manager Bone called Defendant Williams to discuss the reports that the field employees had given to their supervisors.  At 9:11 a.m.,

Defendant Williams called back and admitted that Defendant Local 5 had ordered Plaintiff Schindler field employees to stop working and leave their jobsites for a meeting at Defendant Local 5's offices.

32.   On August 25, 2021, 42 Plaintiff Schindler field employees assigned to new elevator construction projects in and around Philadelphia complied with the directive given by Defendant Local 5 to stop work and leave their jobsites.

33.   Operations Manager Bone sent a letter via email to Defendant Williams and IUEC Regional Director James Chapman, III, demanding that Defendant Local 5 cease their illegal work stoppage and file a grievance about any dispute regarding the discharge of a Plaintiff Schindler employee, to no avail.

34.   On August 26, 2021, 42 Schindler field employees who were scheduled to work at new elevator construction projects in and around Philadelphia did not report as scheduled, and instead informed their respective supervisors that they would not be at work that day.

35.   As a result of Defendant Local 5's unlawful directives, Schindler's scheduled jobs with dozens of residential and commercial customers came to a halt, causing Plaintiff Schindler to be unable to meet its contractual obligations to install elevators.  The following are *some* of the projects affected:

a.   The unlawful strike halted installation of two residential elevators in an IMG apartment complex under construction in Philadelphia.  The delay in Schindler's installation work resulted in delays for other trades at the site, including painters, wall finishers, electricians, telephone installers, among others, whose work cannot be completed until after Schindler has performed elevator installation tasks.

b.      The unlawful strike halted installation of one elevator at Anne Frank Elementary School in Philadelphia which was scheduled to be completed before the beginning of the school year on September 1, 2021.  The work stoppage delayed completion of installation work ahead of a final inspection scheduled for August 31, 2021.  A delay by Schindler necessarily delayed the completion of work by other tradespeople, including fire alarm installation, low-voltage wiring and punch-list items for the general contractor.

c.      The unlawful strike halted Schindler's work installing one elevator at a NJ Natural Gas training facility in Howell, New Jersey.  Schindler's customer directed Schindler to complete installation by August 27, 2021 and is now requesting Schindler to assume the cost for overtime pay.

d.      The unlawful strike halted Schindler's work installing one elevator at Complete Care Bridgestone, a healthcare facility located in Bridgeton, New Jersey, impacting the opening date of their facility.  Prior to the work stoppage, Schindler was on schedule to complete the installation work in advance of a final inspection scheduled for August 27, 2021. The work stoppage threatens to delay the opening of the facility.

e.      The unlawful strike halted Plaintiff Schindler's work installing an elevator at West Chester University in West Chester, PA, scheduled to be open for use at the beginning of the school year.  The elevator is scheduled for an inspection on August 30, 2021, as part of which Plaintiff Schindler must provide a Mechanic to operate the elevator.  If the elevator does not pass final inspection, the University will be unable to obtain a certificate of occupancy for the building.

f.      The unlawful strike prevented the completion of the final state inspection at Greystone Elementary School in West Chester, Pennsylvania, where Schindler was engaged to

8

install one elevator in an elementary school building.  The elevator was scheduled and ready for final inspection on August 26, 2021 which must be completed before the building can receive a certificate of Occupancy.  As a result of the unlawful strike, the state inspection was deemed failed due to no show.  It is expected to take five to ten days before Schindler receives and can pay a state-assessed "failure fee," which must take place before the inspection can be rescheduled.  Schindler will also need to pay additional fees to expedite the rescheduled inspection.  The strike has caused a delay in completing the inspection that is expected to total approximately two to three weeks.  Schindler's customer has threatened to assess Schindler the cost of relocating students and teachers due to the inability to complete the elevator inspection ahead of the September 1, 2021 school-opening date, and cover additional costs from other trades that will need to be present for a final inspection.

36.    After multiple attempts on August 25 and 26, 2021 to end the unlawful strike, Defendant Local 5 verbally agreed to allow some employees to return to work on a limited number of projects on August 27, 2021, and further agreed that all employees would report to work as scheduled on Monday, August 30, 2021.

37.    On August 26, 2021 at or about 2:48 p.m., Schindler's Territory Vice President Philip Harty informed IUEC Regional Director Chapman of all the jobs that were required to be resumed on August 27, 2021at 6 a.m.  The communication sent via email, detailed the specific jobsites and the specific scheduled Schindler field employees that were assigned to those jobs. At 8:56 p.m., IUEC Regional Director Chapman confirmed the names of field employees who he said would report to jobsites at 6 a.m. on August 27, 2021.

38.    Despite this commitment, two employees who were assigned to an installation at 3700 Lancaster Avenue, Philadelphia, did not report as scheduled on the morning of August 27,

9

2021. Schindler has a subcontract with Clemens Construction Company, Inc. for the installation of one elevator in an apartment building located at the site. The elevator was originally scheduled for a final inspection on August 30, 2021 before it can be turned over to the property owner for use. The work stoppage halted completion of the final installation tasks prior to the elevator's inspection, without which the property cannot receive the certificate of occupancy needed to occupy the top three floors of the seven-story building. Thus, the work stoppage threatened to prevent tenants scheduled for September 1, 2021 move-in dates from being able to move in. Moreover, on August 26, 2021 the customer issued a "Notice to Cure" to Plaintiff Schindler and threatened to invoke a liquidated damages provision in its contract with the Company.

39.     Only after Schindler Labor Relations officials intervened, at around 10:40 a.m., the field employees belatedly agreed that they would report to work at the 3700 Lancaster Avenue jobsite, almost five hours after they were scheduled to do so.

40.     The unlawful work stoppage directed by Defendants beginning on August 25, 2021 has adversely impacted Schindler's operations at 31 different installation sites.

41.     On numerous occasions in 2018, 2019, 2020 and 2021, Defendants have ordered concerted refusals to work overtime, wrongly claiming that Plaintiff Schindler must hire additional employees rather than scheduling incumbent employees to work overtime.

42.     On numerous occasions in 2018, 2019, 2020 and 2021, Defendants have attempted to interfere and interfered with Plaintiff Schindler's operations and relationships with actual and prospective customers by, *inter alia*, making improper and false statements to customers about the availability of manpower and scheduling of work, and by statements made with the purpose and effect of damaging Plaintiff Schindler's reputation and goodwill with customers.

10

## COUNT I

### BREACH OF CONTRACT

43.     Plaintiffs reallege paragraphs 1 through 42 as if fully set forth herein.

44.     The NEBA Agreement is a valid and binding agreement.

45.     Plaintiffs NEBA and Schindler have performed all of its obligations under the NEBA Agreement.

46.     Defendants Local 5, Williams, Koch, and Rittenhouse have each deliberately and willfully breached Article XIV Strikes and Lockouts of the NEBA Agreement ordering unlawful strikes against Plaintiffs, over disputes that are subject to the NEBA Agreement's Article XV grievance and arbitration provisions.  The unlawful strikes include, but are not limited to, the walkout commencing on August 25, 2021, and on numerous occasions when Defendant Local 5 has ordered concerted refusals to work overtime.

47.     Plaintiffs NEBA and Schindler have been and will be damaged by Defendants Local 5, Williams, Koch, and Rittenhouse actions as a result of the breach to their obligations under Article XIV, the no-strike clause in the NEBA Agreement.  The unlawful work stoppage not only prevented Plaintiff Schindler from fulfilling its contractual obligations, but also is threatening Plaintiff Schindler's reputation and goodwill with customers.

48.     Upon information and belief, unless enjoined by order of this Court, the concerted refusal to work by the employees represented by Defendants Local 5, Williams, Koch, and Rittenhouse in violation of the NEBA Agreement will reoccur and continue.  Plaintiff Schindler has been and will be unable to render adequate performance of its contractual obligations to install and construct elevators, exposing the Company to the risk of liquidated damages and penalties.

49.     As a result of Defendants Local 5, Williams, Koch, and Rittenhouse's threatened and continuing breaches of Article XIV of the NEBA Agreement, substantial and irreparable injury to Plaintiff Schindler, its customers and the general public has occurred and will continue.

## COUNT II

**TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS**

50.     Plaintiffs reallege paragraphs 1 through 49 as if fully set forth herein.

51.     Plaintiff Schindler has valuable contractual relationships with general contractors and building owners in the greater Philadelphia metropolitan area who have engaged Schindler to manufacture, install, modernize, maintain and/or repair elevators, escalators, moving walks and related equipment.

52.     Plaintiff Schindler has reasonable prospects that general contractors and building owners in the greater Philadelphia metropolitan area will enter into valuable contracts with Schindler to manufacture, install, modernize, maintain and/or repair elevators, escalators, moving walks and related equipment.

53.     Defendants, through their actions detailed therein and without justification or privilege, have specifically intended to cause harm to Plaintiff Schindler's existing contractual relationships and reputation.

54.     Defendants, through their actions detailed therein, and without justification or privilege, have specifically intended to prevent prospective contractual relationship between Schindler and general contractors and building owners from occurring.

55.     Plaintiff Schindler has suffered damages resulting from Defendants' interferences with actual and prospective contractual relationships.

56.     Upon information and belief, unless enjoined by order of this Court, Defendants will continue to direct unlawful work stoppages and concerned refusals to work in violation of the NEBA Agreement, continuing to interfere with Plaintiff Schindler's ability to successfully honor its existing contracts and to obtain such contracts in the future, causing immediate, substantial and irreparable harm to Plaintiff Schindler.

57.     The effect on Defendants if injunctive relief is granted is less onerous than the harm that will be suffered by Plaintiff Schindler and its customer if the injunction is not granted.

58.     Plaintiff Schindler has complied with all obligations imposed by law that are involved in this labor dispute.

59.     Plaintiff Schindler has made every reasonable effort to settle this labor dispute.

60.     No prior application for the relief herein sought by Plaintiff Schindler or for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiffs demand judgment:

(I)     Granting Plaintiffs a Preliminary and Permanent Injunction, enjoining Defendants, their officers, agents, representatives, members, employees, and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Complaint, from in any manner or by any means:

(A)     calling, causing, inducing, encouraging, authorizing, conducting, continuing in, or engaging in any strike, work stoppage, work slowdown, sit-down, or any other refusal to work or act of coercion or interference with Plaintiffs' normal operations;

(B)     by Union discipline, penalty or otherwise interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiffs in the course of any such employee's or agent's work for Plaintiffs;

13

(C)      by threats or otherwise interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiffs' operation, and from taking any action which would interfere with this Court's jurisdiction in the matter;

(D)      causing, inducing, conducting, or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiffs' normal operations prior to the hearing on Plaintiff's application for a Preliminary and Permanent Injunction;

(II)      Awarding Plaintiffs compensatory, exemplary, and punitive damages in an amount to be proven at trial;

(III)      Awarding Plaintiffs its attorneys' fees and costs; and

(IV)      Granting such other and further relief as this Court deems just and proper.

August 30, 2021                                              LITTLER MENDELSON, P.C.


By:    /s Kristine Grady Derewicz
        Kristine Grady Derewicz
        PA Bar ID# 60548
        Tara Param
        PA Bar ID# 323171
        Three Parkway
        1601 Cherry Street, Suite 1400
        Philadelphia, PA  19102-1321
        Telephone:  (267) 402-3003
        Facsimile:  (267) 543-1185
        E-mail:  KDerewicz@littler.com
        E-mail:  TParam@littler.com


        DOWNS RACHLIN MARTIN PLLC
        *PRO HAC VICE ADMISSION PENDING*

14

Timothy E. Copeland, Jr.
132 Main Street, Suite 212
PO Box 9
Brattleboro, VT  05302-0009
Telephone:  (802) 451-2318
Facsimile:  (802) 258-4875
E-mail:  tcopeland@drm.com

ATTORNEYS FOR PLAINTIFFS
NATIONAL ELEVATOR
BARGAINING ASSOCIATION, AND
SCHINDLER ELEVATOR CORP.

15